

10/13/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ROBERT L. ALLEN** | § | |
| xxx-xx-6868 | § | Case No. 06-10147 |
| **and CHERYL D. ALLEN** | § | |
| xxx-xx-3712 | § | |
| 1052 Westmeadow Dr. Beaumont, TX 77706 | § | |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtors' Chapter 13 Plan proposed by the Debtors, Robert L. Allen and Cheryl D. Allen ("Debtors"), the Debtors in the above-referenced case. No timely objections to confirmation of the Debtors' proposed plan were filed, although an untimely objection filed by First Investors Financial Services Corp. ("FIFS") was stricken at the hearing and not considered. However, the Court *sua sponte* questioned the propriety of confirming a plan, even in the absence of an objection from an affected secured creditor, that proposes a bifurcation of a claim into secured and unsecured components when such claim is entitled to protection from such §506 bifurcation by the "dangling paragraph" now appearing in the Code following 11 U.S.C. § 1325(a)(9).[1] Upon submission of post-hearing briefs by the parties, the Court took the matter under advisement. This memorandum of decision

---

[1] This new paragraph was adopted upon the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter referenced as "BAPCPA"). For ease of reference, this opinion shall refer to the dangling paragraph as 11 U.S.C. §1325(a)(*).

disposes of all issues pending before the Court.[2]

## Background

On April 13, 2006, the Debtors filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code and proposed a Chapter 13 Plan under which the Debtors would tender $730.00 per month to the Chapter 13 Trustee for a total of 60 months. The plan proposed to pay a secured value of $9,475 to HSBC Auto Finance for a 2000 Chrysler 300M automobile which was purchased in February, 2004. It also proposed to pay a secured value of $13,340 to FIFS for a 2004 Jeep Liberty automobile purchased in March, 2004. Thereafter, HSBC filed a proof of claim on May 4, 2006 asserting a secured proof of claim for $16,612.68. FIFS subsequently filed a proof of claim on May 26, 2006 asserting a secured claim of $21,120.33.

The §341 meeting of creditors was conducted and concluded in the Debtors' case on May 9, 2006. Under LBR 3015(e), and as noticed to all creditors at the commencement of the case, the deadline for creditor objections to the treatment of their claims under the proposed plan was May 16, 2006. No objections were filed by the deadline. On June 7, 2006, FIFS filed an objection to the Debtors' proposed plan. A confirmation hearing was conducted in Lufkin on June 21, 2006. Upon FIFS's acknowledgment of the untimeliness of its objection, the Court struck its objection.

---

[2] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

However, because it was admitted by the Debtors that the automobiles securing the claims of HSBC and FIFS had been purchased within 910 days of the filing of the Debtors' petition and that such secured claims would otherwise be entitled to protection from bifurcation into secured and unsecured components under §1325(a)(*),[3] the Court inquired as to whether such creditors were entitled to such protection, notwithstanding their failure to bring timely objections to the proposed treatment of their respective claims under the Debtors' proposed plan.

## Discussion

In the context of a chapter 13 plan to which no objection has been lodged, the confirmation of such a plan is governed by §1325(a) which states that "the court shall confirm a plan ..." if the debtor demonstrates the existence of certain statutory prerequisites. Though some jurisprudence from other districts views the use of the word "shall" in that context differently,[4] this Court has consistently interpreted §1325(a) as setting forth mandatory prerequisites for confirmation which a debtor must demonstrate by a preponderance of the evidence even in the absence of any objection. One of those

---

[3] That is, in addition to the debts being incurred within 910 days of the filing date, both of the affected creditors held valid purchase-money security interests in the respective automobiles and that such automobiles were acquired for the personal use of the debtor. Even without the Debtors' admissions, the proofs of claim filed by both creditors establish that the requisite criteria has been met in each case.

[4] Such cases assert that §1325(a) simply describes a scenario in which confirmation becomes mandatory but that it does not preclude confirmation in cases in which one or more of the enumerated requirements are absent.

prerequisites is §1325(a)(5) which governs the proposed plan's treatment of allowed secured claims.[5] §1325(a)(5) essentially provides three options under which the proposed treatment of an allowed secured claim will be deemed appropriate for the purposes of confirmation: (1) by obtaining the acceptance of the treatment by the affected secured creditor; (2) by surrendering the collateral to the secured creditor; or (3) by providing for the retention of the existing lien by the creditor with "a promise of future property distributions (such as deferred cash payments) whose total value, as of the effective date

---

[5] 11 U.S.C. § 1325(a)(5) specifically provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if –

    (5) With respect to each allowed secured claim provided for by the plan –
        (A) the holder of such claim has accepted the plan;

        (B)(i) the plan provides that–
            (I) the holder of such claim retain the lien securing such claim until the earlier of–
                (aa) the payment of the underlying debt determined under nonbankruptcy law; or
                (bb) discharge under section 1328; and
            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
        (iii) if–
            (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
            (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

        (C) the debtor surrenders the property securing such claim to such holder.

of the plan, is not less than the allowed amount of the creditor's [secured] claim." *In re Robinson*, 338 B.R. 70, 73 (Bankr. W.D. Mo. 2006).

In pre-BAPCPA days, plans were routinely confirmed in reliance upon this "cramdown" option through which §506 was utilized to bifurcate a secured creditor's claim into secured and unsecured components. The allowed secured claim of the creditor, as defined by the replacement value of the collateral, regardless of the age or nature of such collateral, would then be satisfied through periodic payments, and any allowed unsecured deficiency claim would receive treatment as a general unsecured claim.

However, one of the major changes invoked by BAPCPA was the Congressional attempt to protect claims secured by newly-purchased vehicles from the use of this cramdown procedure by consumer debtors. This protection was enacted in the form of §1325(a)(*) which provides that:

For purposes of paragraph (5), section 506[6] shall not apply to a claim

---

[6] The bifurcation of a claim is accomplished through §506(a) which provides that:

(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal,

> described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

By eliminating access to the bifurcation provisions of §506(a) in this particular instance, the allowed amount of a claim which falls within the realm of protection offered by §1325(a)(*) must be paid in its entirety. *In re Nicely*, ___ B.R. ___, 2006 WL 2571973, at *2 (Bankr. W.D. Mo. Sept. 7, 2006), citing *In re Brooks,* 344 B.R. 417 (Bankr. E.D.N.C. 2006); *In re Scruggs,* 342 B.R. 571 (Bankr. E.D. Ark. 2006); *In re Shaw,* 341 B.R. 543 (Bankr. M.D.N.C. 2006); and *In re Brown,* 339 B.R. 818 (Bankr. S.D. Ga. 2006).

The Debtors concede the applicability of §1325(a)(*) to the treatment of allowed secured claims in this case. They further concede that, notwithstanding the applicability of the statute, their proposed plan invokes the §506(a) claim bifurcation process prohibited by §1325(a)(*) and that such action would be precluded if they were relying upon the cramdown option provided under §1325(a)(5)(B). However, the Debtors argue

---

> family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a).

that §1325(a)(*) has no application to the *acceptance* of a plan by a creditor under §1325(a)(5)(A) and that, in light of the failure of either secured creditor in this case to present a timely objection to a proposed plan treatment based upon a bifurcation of its secured claim, each creditor has "accepted" the bifurcation treatment and the substantial reduction of its secured claim. Because of those purported acceptances, the Debtors argue that their proposed plan is entitled to confirmation under §1325(a).

Yet to reach such a conclusion, the Debtors must ignore the plain language of §1325(a)(*). Its application is not limited to a cramdown scenario under §1325(a)(5)(B). §1325(a)(*) provides that "[f]or purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph...." The subset of claims described in paragraph (5) consists of all of the allowed secured claims provided for by the plan. Thus, if any of the allowed secured claims provided for by the plan meet either of the stated parameters,[7] the anti-bifurcation protection of §1325(a)(*) is immediately triggered as to that claim.

Once the protection has been triggered, a debtor has no ability to bifurcate that claim through the plan confirmation process in the absence of an affirmative waiver of

---

[7] Again, an allowed secured claim may qualify for the protection offered by §1325(a)(*) only if a creditor has a purchase money security interest securing the debt that is the subject of the claim and:

(1) the debt was incurred within the 910-day [period] preceding the date of the filing of the petition and the collateral for that debt consists of a motor vehicle acquired for the personal use of the debtor, or

(2) the debt was incurred during the 1-year period preceding the filing of the bankruptcy case and the collateral consists of any thing of value, other than a motor vehicle acquired for the personal use of the debtor.

those protections by the affected creditor expressed either in writing or on the record in open court.[8] The protected claim cannot be bifurcated for the purpose of invoking cramdown of the allowed secured claim under §1325(a)(5)(B).[9] The protected claim cannot be bifurcated in the context of surrendering the collateral under §1325(a)(5)(C).[10] Neither can the protected claim be bifurcated for the purpose of soliciting, *and obtaining by default or forfeiture*, an acceptance under §1325(a)(5)(A).[11] That capability, which admittedly has been exercised by Chapter 13 debtors ever since the adoption of the Bankruptcy Code, has now been curtailed to a limited extent by §1325(a)(*). This is not a

---

[8] The Court has perceived nothing in the revised Bankruptcy Code which would preclude a creditor from waiving the protections of §1325(a)(*). However, obtaining an implied acceptance by a failure of a creditor to object does not constitute waiver. Waiver is defined as an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." ... There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). *See also, High v. E-Systems Inc.*, 459 F.3d 573, 581 (5th Cir. 2006). Therefore, while it might be conceivable for the court to confirm a plan in a case in which a debtor has secured an express written waiver by a secured creditor of its protections under §1325(a)(*), that scenario is unlikely to present itself and it is certainly not presented under the facts of this case.

[9] The Debtors admit this limitation.

[10] As a result, courts across the country are consistently ruling that a creditor whose purchase-money claim is protected from bifurcation under §1325(a)(*) is precluded from thereafter filing an unsecured deficiency claim against the bankruptcy estate following surrender and foreclosure. *See, e.g., In re Pool*, ___ B.R. ___, 2006 WL 2801934 (Bankr. D. Ore. Sept. 27, 2006)*; In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006); *In re Brown*, 346 B.R. 868 (Bankr. N.D. Fla. 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006).

[11] As stated above, obtaining an implied acceptance by a failure of a creditor to object does not constitute waiver. Rather, it is a forfeiture. *Kontrick v. Ryan*, 540 U.S. 443, 458, 124 S.Ct. 906, 917, 157 L.Ed.2d 867 (2004) ["Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right[;] waiver is the intentional relinquishment or abandonment of a known right."](internal quotations and citations omitted)].

radical change. It inures only to the benefit of those secured creditors whose claims meet the parameters of §1325(a)(*). However, the Code is clear and unambiguous, and Chapter 13 debtors must acknowledge its proscriptions. The affected secured creditor does not have to invoke the §1325(a)(*) protection through the filing of an objection to plan confirmation. The Code invokes the protection on its behalf.

Thus, while §1322(b)(2) undoubtedly permits a plan to modify most types of secured claims, such modifications must be made in conformity to the requirements of the Bankruptcy Code, including the new §1325(a)(*). As recognized in *In re Montoya*, 341 B.R. 41 (Bankr. D. Utah 2006):

> The Chapter 13 Trustee and the Debtor broadly contend that failure to object to a properly noticed plan constitutes acceptance of the plan. This position overstates the case because the parties improperly combine two significantly different concepts and Code sections. It is correct that, if a plan is properly noticed and otherwise meets the requirements of §1325(a), the Court may deem a secured creditor's silence to constitute acceptance of a plan and the plan may be confirmed. This "implied" acceptance is allowed because Chapter 13, unlike Chapter 11, has no balloting mechanism to evidence acceptance of a proposed plan, and it is only the negative – a filed objection – that evidences the lack of acceptance. When the creditor simply does nothing, the judicial doctrine of "implied" acceptance fills the drafting gap in the Code. The concept of implied acceptance of an otherwise compliant plan ... however, is quite different from proposing a plan intentionally inconsistent with the Code and then waiting for the trap to spring on a somnolent creditor. Creditors are entitled to rely on the few unambiguous provisions of the BAPCPA for their

treatment. They should not be required to scour every Chapter 13 plan to ensure that provisions of the BAPCPA specifically inapplicable to them will not be inserted in a proposed plan in the debtor's hope that the improper secured treatment will become *res judicata*.

*Id*. at 45.

That is precisely what the Debtors attempted in this case. In fact, they went considerably further by intentionally misclassifying the claims in the context of the Court's standardized Chapter 13 plan. Though these claims clearly qualified for §1325(a)(*) protection and treatment within the section of the standardized plan addressing claims to which the §506 valuation is not applicable,[12] the Debtors (or

---

[12] Section 6(A) of TXEB Local Form 3015-a calls for a listing of claims secured by personal property which the debtor intends to retain. It is broken into two categories. The first, ¶ 6(A)(ii)(a), provides, in relevant part:

> Claims to Which §506 Valuation is NOT Applicable. Claims listed in this subsection consist of debts secured by a purchase money security interest in a vehicle for which the debt was incurred within 910 days of filing the bankruptcy petition, or, if the collateral for the debt is any other thing of value, the debt was incurred within 1 year of filing. See §1325(a)(5). After confirmation of the plan, the Trustee will pay to the holder of each allowed secured claim the monthly payment in column (f) based upon the amount of the claim in column (d) with interest at the rate stated in column (e)....

The second, ¶ 6(A)(ii)(b), provides, in relevant part:

> Claims to Which §506 Valuation is Applicable. Claims listed in this subsection consist of any claims secured by personal property not described in Plan paragraph 6(A)(ii)(a). After confirmation of the plan, the Trustee will pay to the holder of each allowed secured claim the monthly payment in column (f) based upon the replacement value as stated in column (d) or the amount of the claim, whichever is less, with interest at the rate stated in column (e). The portion of any allowed claim that exceeds the value indicated below will be treated as an unsecured claim....

Thus, the standardized plan also reflects the plain meaning of the statute — that any claim entitled to be listed under ¶ 6(A)(ii)(a) *must be paid in full*, while a claim listed under ¶ 6(A)(ii)(b) must be paid only the replacement value of the collateral, or the claim amount, whichever is less.

-10-

specifically their counsel) checked "none" in that category and instead unilaterally placed the two secured claims in the category to which the §506 valuation would be applicable.[13] In other circumstances, this would be sanctionable conduct. However, given that this is an issue of first impression in this district and there is no creditor with a timely confirmation objection in this case to whom an award of attorneys' fees would be justified, the Court will forego any award of sanctions in this instance. Similar violations in the future will not be treated similarly. However, such machinations evidence the fact that, in addition to failing to comply with the provisions of §1325(a)(5), the Debtors have failed to propose this plan in good faith in violation of §1325(a)(3).

Thus, when an allowed secured claim is entitled to the protection offered by §1325(a)(*), but that protected status is not acknowledged by the terms of a proposed Chapter 13 plan, that proposed plan is unconfirmable under §1325(a), notwithstanding the lack of a timely objection, in the absence of an affirmative waiver of that protection by the affected creditor.[14]

Accordingly, the Court concludes that confirmation of the Debtors' Chapter 13

---

[13] It is highly unusual that such a direct misrepresentation of fact did not draw an objection from the Chapter 13 Trustee.

[14] The Trustee warns that such an interpretation will necessitate a detailed evidentiary inquiry regarding §1325(a)(*) in every case. However, in addition to the likelihood, notwithstanding the circumstances of the present case, that an affected creditor will timely object to any attempt to circumvent its §1325(a)(*) protections, such an inquiry would likely begin with the Trustee's pre-hearing review to determine that the claims have been properly classified under the proposed plan and that claims which are statutorily entitled to full payment under the plan are, in fact, receiving such treatment. Additionally, the legitimacy of any challenge regarding whether the §1325(a)(*) protections attach to a particular secured claim are subject to scrutiny under Fed. R. Bankr. P. 9011.

plan should be denied. In light of this initial denial of confirmation, the Debtors shall file a new Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtors fail to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtors thereafter fail to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtor to file a subsequent petition under any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[15] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 10/13/2006

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[15] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.